USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/9/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
THOMAS GARVEY,                                      :

            Petitioner,                           :

            -against-                              :     **REPORT and RECOMMENDATION**

GEORGE DUNCAN, Superintendent,                      :     02 Civ. 4208 (KMW)(KNF)
Great Meadow Correctional Facility, and
ELLIOT SPITZER, New York State                      :
Attorney General,
                                              :

            Respondents.
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE KIMBA M. WOOD, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Before the Court is the petition of Thomas Garvey ("Garvey") for a writ of habeas corpus, made pursuant to 28 U.S.C. § 2254. Garvey alleges that his confinement by the state of New York is unlawful because the trial court admitted unreliable identification evidence, thereby violating his right to due process.

The respondents oppose Garvey's application for habeas corpus relief on the grounds that it is time-barred, otherwise procedurally barred and without merit.

## II. BACKGROUND

At around 4:30 a.m. on September 20, 1996, in Bronx County, New York, noises from Violet McKenzie's ("McKenzie") downstairs kitchen woke her as she slept in her upstairs bedroom. According to her trial testimony, she turned on the downstairs lights using a light switch at the top of the staircase and then descended half-way down the stairs to investigate the noises. She testified that she saw one man climbing out her downstairs kitchen window and

another exiting through her front door. As the second man ("second burglar") attempted to unlock the front door, McKenzie's microwave oven and toaster lay at his feet, and her stereo was under his right arm. She testified that she was approximately 12 to 15 feet away from the second burglar when she observed him. McKenzie testified that she ran back upstairs, and, through an upstairs window, observed the second burglar again as he left the house. According to McKenzie, the second burglar turned his head to look back in her direction several times as he fled, and so McKenzie was able to see his face. McKenzie testified that the area in front of her home was lit by a streetlamp, as well as by light from her kitchen.

According to McKenzie, a video compressor[1] was among the items missing from her home after the burglary.

At approximately 5:40 a.m., Police Officer James Elliot ("Officer Elliot") arrived at McKenzie's apartment to investigate the burglary. According to the complaint form completed by Officer Elliot at that time, McKenzie reported that the burglar was black and wore "dark clothing." According to the form, McKenzie provided no other information, and Officer Elliot indicated on the form that McKenzie would probably not be able to identify the burglar.

Later that morning, McKenzie's neighbor, Theodore Gaines ("Gaines"), saw Garvey walk down Gaines' driveway, toward Gaines' backyard. Gaines asked Garvey where he was going, and Garvey responded "I'm going to get something, I'll be right back." Gaines followed Garvey, who retrieved from some trash cans in Gaines' yard what Gaines described at trial as "some type of video machine." Gaines testified that he knew McKenzie's home had been burglarized earlier that morning, and that he believed that he had caught the burglar. Gaines asked his wife to call

---

[1] At trial, McKenzie explained that a video compressor is a device used to imprint pictures onto items such as tee shirts and coffee mugs.

McKenzie over to their yard. McKenzie arrived and saw Garvey surrounded by Gaines and some of her other neighbors. According to McKenzie, Garvey was standing next to the video compressor that was stolen from her home earlier that morning.

Police Officers Dwayne Davis ("Officer Davis") and John Raferty ("Officer Raferty") arrived at the scene to find Garvey surrounded by a small group of people in Gaines' yard. While Officer Davis spoke with Gaines, Officer Raferty escorted Garvey away from the crowd. Officer Raferty testified that he did so "for [Garvey's] own safety." McKenzie approached Officer Davis and informed him that Garvey had stolen property from her home. Thereafter, Garvey was placed under arrest.

On October 1, 1996, a grand jury indicted Garvey for burglary in the second degree (N.Y. Penal Law § 140.25[2]), grand larceny in the third degree (N.Y. Penal Law § 155.35) and criminal possession of stolen property in the third degree (N.Y. Penal Law § 165.50).

Prior to the trial, Garvey moved to exclude from the trial testimony of McKenzie's out-of-court identification of Garvey, on the ground that it was made under suggestive circumstances. The court conducted a hearing at which Officers Davis and Raferty testified about the circumstances of Garvey's arrest. Thereafter, the court determined that evidence of McKenzie's identification of Garvey would not be excluded from the trial. In explaining its decision, the trial court stated:

> No suggestive acts occurred by the police department. The holding of the defendant initially was by a private citizen and when the officer was investigating it, another private citizen, identifying herself, approached him and said that she was a witness to a complaint of a burglary shortly before in her premises. The officer had probable cause to arrest defendant. No suggestiveness occurred, and I find that the out-of-court identification may be testified to and if there is any in-court identification, that, of

3

course, may be testified to, also.

Affidavit of John W. Berry, Exh. F, at 38.

On March 31, 1998, the jury found Garvey guilty of burglary in the second degree and acquitted him of the other charges. Thereafter, the court sentenced the petitioner to a ten-year determinate term of imprisonment and fixed a conditional release date one year prior to the end of that term.

Garvey appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department ("Appellate Division"). Garvey contended, inter alia, that the admission into evidence of "suggestive identification" testimony violated his constitutionally guaranteed right to due process under both the New York and federal constitutions. The Appellate Division affirmed the judgment of conviction. See People v. Garvey, 278 A.D.2d 74, 717 N.Y.S.2d 181 (App. Div. 1st Dep't 2000). The court found, in pertinent part, that Garvey's suggestive identification claim was raised for the first time on appeal, and declined to review the claim in the interest of justice. The court held further that were it to review the claim, it would find "that the identification was sufficiently reliable under all the circumstances." Id. The petitioner sought leave to appeal from the Appellate Division's determination to the New York Court of Appeals. On March 5, 2001, that request was denied. See People v. Garvey, 96 N.Y.2d 783, 725 N.Y.S.2d 647 (2000). On June 4, 2002, Garvey filed the instant application for a writ of habeas corpus, seeking relief on the ground noted above.

### III. DISCUSSION

*Time Bar*

The respondents contend that the instant petition is untimely because it was not filed

within one year of the New York Court of Appeals' decision to deny Garvey leave to appeal to that court. This contention is foreclosed by 28 U.S.C § 2244(d)(1), which provides, in pertinent part, that the one-year limitations period for habeas corpus petitions shall run from the latest of several dates, one of which is "the date on which the judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review." See also Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001) ("We ... hold that the ... limitations period specified in Section 2244(d)(1)(A) does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or — if the prisoner elects not to file a petition for certiorari — the time to seek direct review via certiorari has expired.")

The New York Court of Appeals denied Garvey's application for leave to appeal to that court on March 5, 2001. The ninetieth day thereafter was June 3, 2001, which was a Sunday. Accordingly, the period of time for Garvey to file a petition for certiorari in the Supreme Court ended on June 4, 2001. See Fed. R. Civ. P. 6(a). As the instant petition was filed one year after that date, it is timely.

*Procedural Bar*

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553-54 (1991). The Second Circuit has held that federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in

5

the alternative on the merits of the federal claim. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

The Appellate Division found that Garvey did not preserve his identification evidence challenge for appellate review, as is required by New York law. Therefore, the court found that his claim was procedurally defaulted. However, the court did note, alternatively, that if it were to review the claim, it would find that the claim lacked merit.

In most cases, a state procedural bar constitutes an adequate and independent state law ground that is sufficient to preclude federal habeas corpus review. "In exceptional cases, however, an 'exorbitant application of a generally sound rule' may affect the adequacy and independence of the state procedural ground, and allow the United States district court to consider the merits of a constitutional claim." Rosa v. Herbert, 277 F. Supp. 2d 342, 351 (S.D.N.Y. 2003) (quoting Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 885 [2002]). Before accepting a procedural bar defense, a federal court must examine the adequacy of the alleged procedural default, as:

> a procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question. When a federal court finds that the rule is inadequate under this test the rule should not operate to bar federal review. Nonetheless, the principles of comity that drive the doctrine counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law.

Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (internal citations and quotation marks omitted).

The Second Circuit has stated that a procedural bar is adequate to support a state court judgment only if it is based on a rule that is "firmly established and regularly followed" by the state court in question. Cotto v. Herbert, 331 F.3d 217, 239-41 (2d Cir. 2003). Thus, the parties

6

to an action must have notice of the state procedural rule and the rule must be applied consistently in similar circumstances. See Bell v. Poole, No. 00 CV 5214, 2003 WL 21244625, at *9 (E.D.N.Y. April 10, 2003). "[T]he question of when and how defaults in compliance with state procedural rules can preclude . . . consideration of a federal question is itself a federal question." Henry v. Mississippi, 379 U.S. 443, 447, 85 S. Ct. 564, 567 (1965). Furthermore, a state procedural rule must serve a legitimate state interest. See Rosa, 277 F. Supp. 2d at 351; Smart v. Scully, 787 F.2d 816, 820 (2d Cir. 1986). However, "the adequacy of a state procedural bar is determined with reference to the particular application of the rule; it is not enough that the rule generally serves a legitimate state interest." Cotto, 331 F.3d at 240 (internal quotation marks omitted). Therefore, an inquiry into whether the application of a procedural rule is "firmly established and regularly followed" in the specific circumstances presented in a case includes "an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Cotto, 331 F.3d at 240.

The inability of state appellate courts to entertain an issue that has not been preserved for their review is rooted in New York's contemporaneous objection rule. That rule is found in New York Criminal Procedure Law ("NYCPL") § 470.05 which, in its most pertinent part, provides that:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented where a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party , the court expressly decided the question raised on appeal. In addition, a party who without success

> has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

NYCPL § 470.05(2).

The purpose of the rule is "to fairly apprise the court and the opposing party of the nature and scope of the matter contested." People v. Jones, 81 A.D.2d 22, 41-42, 440 N.Y.S.2d 248, 261 (App. Div. 2d Dep't 1981). This provides the court of first instance an opportunity to correct an alleged error at the earliest possible juncture in the proceedings.

In the case at bar, Garvey need not demonstrate — and indeed, he does not contend — that the contemporaneous objection rule is generally "inadequate" to preclude federal habeas review; it is enough that the rule be "misapplied in his case in particular." Garcia, 188 F.3d at 79; see also Lee, 534 U.S. at 386-87, 122 S. Ct. at 891 (considering circumstances under which state procedural rule was applied). Accordingly, it must be determined whether "there is a fair and substantial basis in state law" for the application of New York's contemporaneous objection rule in the case at bar. See Garcia, 188 F.3d at 78 (internal quotation marks omitted).

To analyze the adequacy of the alleged procedural bar, this court must "look to the statute and caselaw interpreting New York's statutory preservation rule in criminal proceedings." Cotto, 331 F.3d at 243; see also Lee, 531 U.S. at 382, 122 S. Ct. at 889. In decisions applying NYCPL § 470.05(2), New York state courts have held consistently that "an issue of law is preserved even if it is not specifically raised by the defendant so long as the trial court expressly rules on the issue following an earlier objection." Cotto, 331 F.3d at 244 (collecting and analyzing cases). For example, in People v. Edwards, the New York Court of Appeals held that "the issue of

8

probable cause to arrest is preserved for our review because, in its written decision denying defendant's motion to suppress, the trial court 'expressly decided' the question in response to a 'protest by a party.'" People v. Edwards, 95 N.Y.2d 486, 491 n.2, 719 N.Y.S.2d 202, 204 n.2 (2000) (citing NYCPL § 470.05[2]); see also People v. Ayala, 142 A.D.2d 147, 157, 534 N.Y.S.2d 1005, 1011 (App. Div. 2d Dep't 1988) (holding that an issue pressed by defense on appeal was preserved because "a question of law is preserved if the point was expressly decided by the trial court in response to a protest, even though the protesting party overlooked that argument when making the protest"). Moreover, NYCPL § 470.05(2) and New York decisional law require only that a litigant preserve its protest to a trial court ruling for review; a litigant need not preserve particular legal grounds for that protest. See, e.g., People v. McGuiness, 245 A.D.2d 701, 702, 665 N.Y.S.2d 752, 754 (App. Div. 3d Dep't 1997) (noting that, after an amendment in 1986, NYCPL § 407.05(2) "relieves [a] defendant from stating a particular legal ground in order to preserve an error for appeal").

As noted above, the prosecution in the case at bar stated its intention to introduce McKenzie's identification testimony at trial, and the petitioner requested that the trial court exclude that evidence from the trial. After a hearing, the trial court decided to deny the petitioner's request because it found that the identification at issue was not made under suggestive circumstances. Therefore, the propriety of permitting the prosecution to introduce the identification evidence at trial was preserved for appellate review. Neither the Appellate Division nor the respondent identifies a fair and substantial basis in New York law for a contrary determination.

The Appellate Division's rejection of Garvey's claim was not founded upon an adequate

9

state law ground, and review of the claim by this court is not procedurally barred. Accordingly, it is appropriate to address the merits of Garvey's habeas corpus petition.

*Pretrial Identification Procedures*

Where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition, 28 U.S.C. § 2254 provides that a writ of habeas corpus may issue only if the state court's adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411, 1522. In order to grant the writ, there must be "[s]ome increment of incorrectness beyond error. [T]he increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Garvey contends that when the trial court denied his request to exclude the identification evidence, it relied improperly upon the fact that the police did not have any role in creating the allegedly suggestive circumstances under which McKenzie encountered Garvey in Gaines' yard. However, in order to obtain habeas corpus relief, it is the Appellate Division's decision to affirm his conviction that Garvey must demonstrate to be contrary to or an unreasonable application of federal law. That court noted, although it did not have to reach the issue to resolve Garvey's

appeal, that Garvey's claim concerning identification evidence lacked merit because the identification evidence at issue was "sufficiently reliable under the circumstances." Garvey, 278 A.D.2d at 74, 717 N.Y.S.2d at 182.

Identification evidence should not be admitted into evidence at a trial when "'the confrontation conducted ... was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'" Neil v. Biggers, 409 U.S. 188, 196, 93 S. Ct. 375, 380 (1972) (quoting Stovall v. Denno, 388 U.S. 293, 301-02, 93 S. Ct. 375, 380 [1967]). Ultimately, the standard "is that of fairness as required by the Due Process clause of the Fourteenth Amendment." Manson v. Braithwaite, 432 U.S. 98, 113, 97 S. Ct. 2243, 2252 (1977).

Even if an out-of-court identification procedure is unnecessarily suggestive, evidence of it is still admissible at trial "if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability." United States v. Simmons, 923 F.2d 934, 950 (2d Cir. 1991). "[R]eliability is the linchpin in determining the admissibility of identification testimony." Manson, 432 U.S. at 114, 97 S. Ct. at 2253. "[T]he factors to be considered in evaluating the likelihood of misidentification include [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382.

The petitioner contends that McKenzie was unable to provide a detailed description of the burglar to Officer Elliot immediately after the burglary. Moreover, the petitioner characterizes

McKenzie's opportunities to observe the burglar as limited, and the distances from which she observed the burglar as "considerable." The petitioner also points to evidence in the record that McKenzie was nervous at the time of the burglary. According to the petitioner, these factors make McKenzie's pretrial identification of Garvey unreliable.

There was, however, evidence in the trial record that: (a) McKenzie had a clear opportunity to observe Garvey at the time of the crime; (b) she was not a casual or inattentive observer, as she descended the stairs for the specific purpose of investigating the loud noise she had heard; (c) after turning on the downstairs lights, McKenzie had a clear, unobstructed view of the second burglar as he was trying to escape through McKenzie's front door; (d) McKenzie also observed the second burglar's face again, a few moments later, from a bedroom window, as he looked back repeatedly toward McKenzie's house while fleeing; (e) McKenzie expressed certainty that Garvey was the burglar she saw fleeing her home; (f) it was just a few hours after the burglary that McKenzie told Officer Davis that Garvey was one of the burglars and was wearing the same clothes that one of the burglars had worn.

In light of the factors set forth in <u>Biggers</u>, the above-noted evidence in the trial record provided a sufficient basis upon which to conclude that McKenzie's identification of Garvey was reliable. Therefore, the Appellate Division did not apply federal law unreasonably when it noted that Garvey's suggestive identification claim was without merit and affirmed his judgment of conviction. Consequently, Garvey is not entitled to habeas corpus relief.

### IV. RECOMMENDATION

For the reasons set forth above, I recommend that petitioner's application for a writ of habeas corpus be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28. U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Wood. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolwk v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       August 9, 2005

Respectfully Submitted,

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies Mailed To:

John W. Berry, Esq.
Robert T. Johnson, Esq.